## CHARLES RIVER NATIONAL BANK *vs.* JOSEPH W. DAVIS.

The cashier of a bank, which paid a check to D. and four days afterwards discovered reason to believe that it was forged, caused it to be presented, by a messenger, with a demand for indemnity, at D.'s office, where a clerk received it in D.'s absence and filled out and gave in exchange for it a check of like amount left signed in blank by D. When the messenger returned and delivered this check to the cashier, D. was present, conversed on the subject, took the check into his hands, said something about the other check, and expressed no dissent or objection to what was being done, supposing that his check was issued by his brother, who had authority to issue checks for him in his absence. Later in the same day D. denied his clerk's authority, tendered back the other check, stopped the payment of his own, and demanded its return, which was refused. In an action by the bank against him on his check, *Held*, that the surrender of the other check was a sufficient consideration for the issue of the check in suit; that it was competent for the jury to find, on the evidence, that D. at the interview with the cashier understood the transaction, and ratified the issue of his check; and that, on such a finding, it was incompetent for him to revoke the ratification, and immaterial whether he supposed that his check was issued by one person or another.

CONTRACT to recover the amount of a check on the National Hide & Leather Bank, signed by the defendant and dated February 13, 1867, which the bank refused to pay on demand, and the defendant also refused to pay, although requested after due notice given to him of the refusal of the bank.

At the trial in the superior court, before *Ames*, C. J., no question was made as to these demands and refusals, and these facts appeared in evidence: On February 8, 1867, the defendant, who was a banker in Boston, received from Absalom Fiske a check, bearing that date, and purporting to be drawn by Nicodemus Blanchard on the plaintiff bank, which was situated in

Cambridge, and whose agent in Boston was the Merchants National Bank. The defendant deposited this check with the National Hide & Leather Bank in Boston, which passed it to his credit; and in regular course of business it was passed through the Clearing House to the Merchants' National Bank and received by the plaintiffs on February 9, who charged it to the account of Blanchard, who was a depositor with them. Blanchard was first informed on February 13 that it was thus charged to him, when he at once pronounced it a forgery and denied liability on it. The plaintiffs' cashier immediately took the check to Boston, and there ascertaining that it had come through the Clearing House from the National Hide & Leather Bank, took it to that bank, and informed the bank officers of Blanchard's statement. A messenger of the National Hide & Leather Bank accordingly took it to the defendant's banking-house, and represented that it was forged, and claimed that it should be made good. The defendant, and his brother, who was his confidential agent, were both absent; but one of his clerks, having in possession a number of checks signed in blank by the defendant for the purpose of being filled out and used in the ordinary business of the office in his absence, took the Blanchard check, and filled out and gave to the messenger, in exchange for it, the check in suit, notwithstanding the objection of another clerk, in the messenger's presence, to this proceeding, and his remark that the matter ought to be delayed until the defendant should return. The messenger returned, with the check in suit, to the National Hide and Leather Bank, and delivered it to the plaintiffs' cashier in the presence of the defendant, who " had conversation on the subject, took the new check into his hand, said something about the Blanchard check, and did not express any dissent or make any objection to what was being done." The defendant, in his testimony, " explained this fact by saying that he thought that the check was filled out and written by his brother, who was his confidential agent, and, as he believed, would not fill it out and deliver it without due inquiry, and who alone had a full written power of attorney from the defendant.' The plaintiffs' cashier afterwards deposited the check with the

Merchants' National Bank. On the same afternoon the defend-ant served written notice on the plaintiffs that the check in suit was delivered by his clerk without authority, was without consideration and issued by mistake, and that payment of it had been stopped; and at the same time tendered back to the plaintiffs the Blanchard check, which they refused to receive.

The defendant requested the judge to rule " that the conduct of the defendant, if he acted under the mistaken impression that his brother had filled out and issued the check, would not be a ratification of its issue; that the circumstances of the case showed that it was without any sufficient consideration; that the payment by the plaintiffs of the Blanchard check was at their own risk; that they were guilty of such laches as would defeat their right to recover in this action; and that keeping that check for four days would have the same effect."

The judge declined so to rule; and instructed the jury "that, if the defendant understood the transaction, saw the new check, knew the use that was to be made of it, and that the plaintiffs received it as payment of, or in exchange for, the check said to be a forgery, and if he knowingly assented to it by acts or words, it was an adoption of the new check as his own, and a ratification of the act of the clerk in issuing it, and that under such a state of facts it was immaterial whether he supposed it was issued by his brother or not; that the presentation of the alleged forged check with a claim of indemnity, and the giving up of that check to the defendant, if in good faith and upon a claim of right, would be a sufficient consideration for the check in suit; and that there was no evidence of laches on the part of the plaintiffs, if the jury thought on the evidence that the alleged forgery was one which might mislead and deceive a cashier exercising reasonable and ordinary care, skill and observation, and that the returning of the check as soon as the forgery was discovered was seasonable, although four days after the defend-ant had received it."

The verdict was for the plaintiffs; and the defendant alleged exceptions.

*B. Dean & T. Dean*, for the defendant.

*R. H. Dana, Jr., & L. S. Dabney*, for the plaintiffs.

FOSTER, J. The surrender of the forged check, on which the defendant had received the money, was a sufficient consideration for giving the one now in suit. The question whether the present one, which was filled out over the defendant's blank signature by one of his clerks, was binding upon him, was submitted to the jury at the trial, upon full, appropriate and exactly accurate instructions. " If the defendant understood the transaction, saw the new check, knew the use that was to be made of it, and that the plaintiffs received it as payment of or in exchange for the check said to be a forgery, and if he knowingly assented to it by acts or words, it was an adoption of the new check as his own, and a ratification of the act of the clerk in issuing it." All this the jury by their verdict have found. And nothing more was needful, to establish the liability of the defendant. Such a ratification, once intelligently made, cannot afterwards be recalled. And, as the defendant understood the transaction when he ratified it, it was immaterial whether he supposed the new check had been given by one person or another. *Exceptions overruled.*